UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CLARENCE R. WEST, SR., )
)
    Petitioner, )
)
vs. ) Case No. 4:09CV0365 AGF
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Respondent. )

## MEMORANDUM AND ORDER

This action is before the Court[1] on the pro se petition by Clarence R. West, Sr., for a writ of mandamus pursuant to 28 U.S.C. § 1361 to compel the Social Security Administration ("SSA") to reopen and review a benefits decision made on February 5, 1986. For the reasons set forth below, the writ of mandamus shall be denied.

## BACKGROUND

The record indicates that on December 15, 1970, Petitioner was discharged from naval service with an undesirable discharge due to misconduct. On July 11, 1984, Petitioner filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1384(f), respectively. Following a hearing held in August 1985, an Administrative Law Judge ("ALJ") awarded Petitioner both DIB and SSI on August 28, 1985, based on a disability onset date of June 1984 due to mental impairment.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

On February 5, 1986, the Appeals Council of the SSA issued a decision stating that it had reviewed Petitioner's case on its own motion and determined that Petitioner had not met the insured-status rules for DIB at any time since his disability onset date of June 1984, because he did not meet the statutory "20/40 Rule," that is, he did not have enough earnings in at least 20 quarters (a quarter being three calendar months) of the 40-quarter period that ended in the quarter in which he became disabled. See 42 U.S.C. § 423(c)(1).

The Appeals Council stated that Petitioner had a prior period of disability from June 1978 through January 1980, and, thus, none of the quarters in that period were counted in the applicable 40-quarter period. According to the Appeals Council, Petitioner therefore was required to have at least 20 quarters of coverage in the 40-quarter period of September 1972 through June 1984, and an examination of Petitioner's earning record revealed that he only had 16 quarters of coverage in that period. Nor did Petitioner meet any of the alternative insured status rules. The Appeals Council explained that its review was restricted to DIB eligibility and that it made no findings with respect to Petitioner's eligibility for SSI based on disability. (Doc. #1-1 p. 14-15.)[2]

The record indicates that a copy of this decision was mailed to Petitioner as well as to his counsel of record. The transmittal notice apprised Petitioner that he had 60 days

---

[2] On February 20, 1986, the ALJ reopened and amended his 1985 decision to appoint a representative payee for Petitioner because Petitioner was suffering from a "severe mental impairment." The ALJ confirmed "all other findings and conclusions of law with respect to [Petitioner's] claim" for DIB and SSI. (Doc. #1-1 p. 12.)

to seek judicial review of the adverse decision.  Id. p. 13.

On an SSA form date-stamped March 15, 1986, Petitioner reported that he had been living on the streets since December 1985.  Id. pp. 28-29.  It is undisputed that Petitioner continued receiving SSI until 1992, when a nonservice-connected disability pension granted by the Veterans Administration ("VA"), based partially on paranoid schizophrenia, made him ineligible for SSI.

The record indicates that on September 14, 1995, Petitioner sought review of his undesirable discharge from the Navy.  He asserted that he was unfit for service in 1970 due to his psychiatric condition and should have been medically retired rather than discharged due to misconduct.  Petitioner was advised by the Board of Corrections of Naval Records on August 6, 1997, that his naval record was corrected to show that on December 15, 1970, the Navy found him unfit for further military service due to service-incurred bipolar disorder ratable at 30 percent at the time.  A "Rating Decision" issued by the VA on October 1, 1997, changed Petitioner's disability from nonservice-connected to service-connected, and evaluated his mental disorder as 100 percent disabling from June 1984.  Id. pp. 33-39.

Petitioner applied for DIB again (apparently sometime in 1997) and by notice dated July 26, 1998, was awarded such benefits retroactive to January 1997.  Id. pp. 17-19.  According to Petitioner, he continued receiving DIB checks through December 1999, at which point the payments stopped.  Petitioner reported the non-payment, and in March 2000 was told that the 1998 award violated the SSA's February 5, 1986 decision, and that

this had resulted in an overpayment to Petitioner in excess of $24,000.[3] The SSA then took measures to collect the overpayment.

According to Petitioner, in April 2000 he filed a request to reopen the Appeal Council's February 1986 determination finding that he was ineligible for DIB. Petitioner asserted that he had never received a copy of the Appeals Council's 1986 decision. On October 13, 2000, the request for reopening was denied on the ground that it had been filed long after the four years allowed by regulation, 20 C.F.R. § 404.988(b),[4] for

---

[3] The record includes an undated memo from the Appeals Council to the Office of Disability and International Operations ("ODIO") in Maryland on Plaintiff's case. The memo references a "Request for Case Action" by the ODIO dated September 18, 1998, pursuant to which the Appeals Council "carefully studied" Plaintiff's case. The Appeals Council explained that the favorable determination awarding Plaintiff DIB benefits retroactive to January 1997, "invades the period ruled on by" the Appeals Council's February 5, 1986 decision, as well as other prior determinations from 1974 and 1975, and one form some time after 1980 finding that Plaintiff's disability ceased in 1980. The Appeals Counsel stated that the time for reopening those prior determinations has passed, adding "It is also questionable whether there is any merit to the issue of reopening." The Appeals Council directed the ODIO to take the necessary action to terminate Plaintiff's DIB benefits. (Doc. #1-1 p. 20-21.)

[4] § 404.988 provides in relevant part as follows:

**Conditions for reopening.**
A determination, revised determination, decision, or revised decision may be reopened --
(a) Within 12 months of the date of the notice of the initial determination, for any reason;
(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or
(c) At any time if --

\* \* \*

(7) It finds that the claimant did not have insured status, but earnings were

reopening a decision for "good cause."  The Appeals Council asserted that copies of the February 1986 decision had been sent to Petitioner and his representative "in accordance with standard procedures."  The Appeals Council did not find the "extreme delay" in requesting reopening to be reasonable, noting that the failure to receive checks required some follow-up, and that it was not likely that SSI checks could be mistaken for DIB checks since the former were marked as "SSI" checks.  The Appeals Council concluded that Petitioner's assertion of non-receipt of the February 1986 decision was not timely, and refused to reopen the decision.  (Doc. #2 p. 36.)[5]

Sometime after at least mid-2006, Plaintiff sent a letter to the SSA, which is undated, in which Petitioner stated that he had made several unsuccessful attempts to have the February 1986 decision reopened, but had been told that res judicata prevented

---

later credited to his or her earnings record to correct errors apparent on the face of the earnings record  . . . ; [or]
(8)  It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made.

\* \* \*

Section 404.989 in turn provides:

**Good cause for reopening.**
(a)  We will find that there is good cause to reopen a determination or decision if -
- (1)  New and material evidence is furnished;
(2)  A clerical error in the computation or recomputation of benefits was made; or
(3)  The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

[5]   Only the first page of this document is in the record.

the SSA from doing so, despite his assertions that he never received a copy of the February 1986 decision. Petitioner referenced the March 15, 1986 SSA form that showed he was living on the streets from December 1985 until March 1986. He asserted that he was suffering from a severe mental condition at the time and did not have a proper place of residence until 1988. During this period, he was retrieving some of his benefit checks directly from the local SSA office, which Petitioner suggested was evidence that he had notified the SSA of a change in his living and mailing arrangements and that apparently the information was not disseminated into the SSA's system properly. (Doc. #1-1 p. 7-9.)

Petitioner also stated that he had not had any contact with his attorney after the hearing in 1985 and that the attorney had no knowledge of Petitioner's whereabouts in February 1986. Petitioner asserted, and his exhibits support, that when he made efforts to confirm this, he was told that the attorney had passed away and that all legal records from that time period were destroyed in a fire. Petitioner had also requested verification from the SSA of the address that had been on file for him in 1986 and was told that those computer records no longer existed.[6] Id.

Petitioner then asserted that the information considered in the February 1986 decision included military records which were in error and had since been corrected to establish December 1970 as the onset date of his disability. He claimed that if the "correct evidence" had been considered he would have met the 20/40 rule. Petitioner

---

[6] The record includes document support of these assertions. (Docs. #2 p. 26 & #1-1 p. 25.)

6

further asked that the decision be reopened under 20 C.F.R. § 404.988(c)(8), which, as previously noted, provides that a decision by the SSA "may be reopened at any time if . . . an error . . . appears on the face of the evidence that was considered when the determination or decision was made." Id.

To sum up his request, Petitioner claimed that his non-receipt of the 1986 decision afforded him no opportunity to request a timely review. He asked the SSA to apply 20 C.F.R. § 404.911(b)(1) and (b)(7)[7] and find good cause for his failure to meet the deadline for a request to review the February 1986 decision. Id.

No response to Petitioner's undated letter to the Appeals Council appears in the record. Petitioner filed this action on March 3, 2009, approximately 14 years after the Appeals Council's February 1986 decision, and 8½ years after the October 13, 2000 denial of Petitioner's request to reopen the 1986 decision.

## ARGUMENTS OF THE PARTIES

In his initial filing, Petitioner asserts all the arguments he raised in his above-described letter to the SSA. He maintains that he was unaware that he was not receiving

---

[7] § 404.911(b)(1) and (b)(7) provide:

(b) Examples of circumstances where good cause [for missing a deadline to request review] may exist include, but are not limited to, the following situations:
(1) You were seriously ill and were prevented from contacting us in person, in writing, or through a friend, relative, or other person.

\* \* \* \*

(7) You did not receive notice of the determination or decision.

7

DIB at the time in question because, due to his mental state, he could not distinguish between DIB and SSI checks. Petitioner argues that he is entitled to mandamus relief in the form of an order that the SSA reopen and review the February 1986 decision under 42 U.S.C. § 405(b)(3)[8] and 20 C.F.R. § 404.911(b)(7).

The SSA argues that § 405(b)(3) does not apply because Petitioner alleges non-receipt of notice, and not good faith reliance on information provided to him by the SSA in determining whether to reapply for benefits or seek review of a decision. The SSA argues that § 404.911(b)(7) is also inapplicable to the situation here, but rather applies to the granting of an extension to file for judicial review of a final agency decision, and that the issue in this case is whether Petitioner can obtain relief from the Commissioner's decision not to reopen the 1986 Appeals Council's decision. The SSA argues that Petitioner did not have the requisite "good cause" to justify reopening within four years; and even if he did have good cause, he did not meet the four-year time requirement. Further, Petitioner did not assert that he met any of the § 404.988(c) exceptions that

---

[8] § 405(b)(3)(A) provides:

> A failure to timely request review of an initial adverse determination with respect to an application for any benefit under this subchapter or an adverse determination on reconsideration of such an initial determination shall not serve as a basis for denial of a subsequent application for any benefit under this subchapter if the applicant demonstrates that the applicant, or any other individual referred to in paragraph (1), failed to so request such a review acting in good faith reliance upon incorrect, incomplete, or misleading information, relating to the consequences of reapplying for benefits in lieu of seeking review of an adverse determination, provided by an officer or employee of the [SSA] . . . .

8

would allow a reopening "at any time," and, in any event, the evidence does not indicate that Petitioner met any of the circumstances that would allow reopening at any time.

The SSA further argues that the decision not to reopen a prior decision is in the SSA's complete discretion, not subject to judicial review. The SSA recognizes that when a constitutional claim is involved, a federal court would have jurisdiction to review an agency decision not to reopen a prior decision, but argues that here Petitioner's right to due process was not violated. The SSA asserts that although mental incapacity can be a reason to grant a request to reopen, it does not afford such relief when the person has someone legally responsible for prosecuting the claim such as an attorney; and that the SSA fulfilled its constitutional duty by sending notice to Petitioner's address, as listed with the SSA, and to the attorney responsible for his claim.

In a supplemental brief to his petition, Petitioner adds 20 C.F.R. § 404.988(c)(8) as a basis for relief, arguing that "an error that appears on the face of the evidence" was considered in the February 1986 decision, and therefore, the requirements to reopen a decision at any time have been met. Petitioner also asserts that his non-receipt of the February 1986 decision was the fault of the SSA and afforded him no opportunity to request a timely review, violating his constitutional right of due process.

## **DISCUSSION**

The Court first concludes that it has no jurisdiction over Petitioner's claims with the exception of his due process claim based on his alleged non-receipt of the Appeals Council's February 1986 decision. Mandamus jurisdiction in federal court is governed

9

by 28 U.S.C. § 1361, which confers original jurisdiction on district courts of any action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is intended "to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984).

The Supreme Court has declined to decide whether 42 U.S.C. § 405(h)[9] bars mandamus jurisdiction over claims arising under the Social Security Act. Buchanan v. Apfel, 249 F.3d 485, 491 (6th Cir. 2001); Belles v. Schweiker, 720 F.2d 509, 512 (8th Cir. 1983). Circuit courts have held that mandamus jurisdiction is not precluded by § 405(h) "in appropriate circumstances." Monger v. Bowen, 817 F.2d 15, 17 n.2 (4th Cir. 1987); see also Ganem v. Heckler, 746 F.2d 844, 850-52 (D.C. Cir. 1984); Burnett v.

---

[9] 42 U.S.C. § 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided [in § 405(g) for judicial review of final decisions following a hearing]. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Court notes that "[i]t is well-settled that the Secretary's refusal to reopen an administratively final decision . . . is not a 'final decision . . . made after a hearing' subject to judicial review under § 405(g)." Boock v. Shalala, 48 F.3d 348, 351 (8th Cir. 1995) (citation omitted).

10

Bowen, 830 F.2d 731, 737-38 (7th Cir. 1987). In Belles, the Eighth Circuit held that "in cases . . . which involve claims essentially procedural in nature, § 405(h) presents no obstacle to mandamus jurisdiction." 720 F.2d at 512. Put another way, mandamus jurisdiction exists where the Social Security Commissioner has a "nondiscretionary duty to follow both case law and his own administrative regulations." Buchanan, 249 F.3d at 492.

Here, most of Petitioner's arguments focus on the merits of why the Appeals Council reached the wrong decision in February 1986, and why it should have granted his request to reopen that decision. For example, Petitioner argues that the Appeals Council should have reopened the earlier decision under section § 404.988(c)(8) because the decision was based on incorrect evidence. Section § 404.988(c)(8) grants the SSA the authority to reopen a decision, but does not make it a mandatory requirement. Even assuming that it is clear that the February 1986 decision should have been reopened, the Appeals Council's obligation to do so was not a nondiscretionary duty and thus "does not satisfy the strict requirements for issuance of a writ of mandamus." See Wells v. Astrue, No. 09-32-GWU, 2009 WL 3400911 at *4 (E.D. Ky. Oct. 20, 2009).

Petitioner, however, also claims his right of due process was violated due to his non-receipt of the February 1986 decision. When colorable constitutional questions are raised and at issue, "the availability of judicial review is presumed," and a district court has subject matter jurisdiction to consider whether the refusal to reopen a claim for disability benefits was proper. Sanders, 430 U.S. at 109; see also Boock, 48 F.3d at 352.

The requirements of procedural due process are applicable to the decision here to terminate Petitioner's DIB. See Atkins v. Parker, 472 U.S. 115, 128 n. 31 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Dusenbery v. United States, 534 U.S. 161, 168 (2002). When the name and address of an interested party is known, due process generally requires notice by mail or equivalent means designed to tender actual notice. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798-800 (1983).

Here, the Court concludes that the SSA provided constitutionally adequate notice to Petitioner regarding the February 5, 1986 decision by mailing a copy of the decision to Petitioner's last known address and to his attorney of record. It was not until mid-March 1986 that Petitioner notified the SSA that he was homeless. The fact that Petitioner picked up some of his benefit checks from the local SSA office did not necessarily alert the SSA that in February 1986 he was no longer at the address it had for him at that point. Furthermore, even if the listed address for Petitioner was incorrect when the February 5, 1986 decision was mailed to him, Petitioner was provided constructive notice that his award of DIB had been reversed, by the fact of non-receipt of such benefits from 1986 to 1992 (when he received his VA pension). Petitioner himself stated that by 1988, he had a proper residence. It is fair to assume that by that time he was able to comprehend that he was not receiving DIB. Petitioner does not assert, nor does the record support a finding,

that his mental impairment prevented him from understanding, during the entire four years following the cessation of his DIB benefits, that he was not receiving such benefits.[10]  Accordingly, his due process claim fails.  Cf. Boock, 48 F.3d at 353 (rejecting the plaintiff's due process argument that his mental impairment made the SSA's notice of the denial of benefits and appeal rights insufficient, where the SSA concluded that impairment did not prevent him from filing a timely appeal.)

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's application for a writ of mandamus is **DENIED** and this case is **DISMISSED**.

A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2010.

---

[10]  As noted above, the record further reflects that in the mid-1990's, Petitioner challenged his discharge rating from the Navy.  And Petitioner clearly knew he had not been receiving DIB benefits when, in 1997, he again applied for DIB.  But it was not until 2000, when his 1998 award of DIB benefits ceased due to the 1986 decision, that he questioned the 1986 decision, asserting, for the first time, that he had never received it.